United States District Court
For the First Circuit

Ricardo Sampson
Petitioner
V.
Carmen Picknally
Assistant District Attorney
For the Commonwealth of Massachusetts

Petition For Writ of Habeas Corpus

Brief for Petitioner

## Proof of Service

Plymouth, S.S.

Plymouth, Mass.
March 08, 2005

I, Ricardo Sampson, hereby certify that I have this date served a copy of the foregoing Brief upon Carmen Picknally, Assistant District Attorney by causing a copy of same to be delivered 1st class mail to the office of Hampden Superior and to the United States District Court, District of Massachusetts, One Courthouse way, Boston, Massachusetts. 02210.

-26-

Respectfully Submitted

Date. 03-08-05   R. Sampson.
Ricardo Sampson
26 Long pond Road
Plymouth, ma. 02360

Exhibit A

judgments was entered on the docket of this Court on February 7, 2002.

### Statement of Facts

The convictions in this case are based on an incident November 25, 1998, between the defendant and a Springfield police officer named Michael White, who resigned from the police force about six months after the incident. [II. 43]

A year or two before this incident, Officer White had threatened "to get" the defendant. On that occasion, Mr. Sampson was standing in front of his cousin's business and Officer White grabbed him and threw him against the wall saying, "You look like a guy who would rob a lady of her ring at a convalescent home." Mr. Sampson did not know that his assailant was a police officer, so he "flashed the person off." When he realized that the man was an officer, he froze. Officer White said he was "going to get him." Later, Mr. Sampson learned that Officer White was known in the area as "Robocop." [II. 134]

On the evening of November 25, 1998, Officer White was driving a marked police cruiser in the Mason Square section of Springfield. Officer Richard Ward was with him. The officers observed an automobile traveling north on Eastern Avenue in excess of the speed limit. [II. 23-25, 78] They stopped the car, pulled the

3

cruiser up behind it, and got out of the cruiser. As they approached the car on foot, it sped away. The officers got back in the cruiser and pursued the car across Wilbraham Road and State Street and into the driveway of the Rebecca Johnson School. Ricardo Sampson was driving the car. He fled in one direction and the two passengers fled in a different direction. [II. 26-28, 46]

Michael White testified that he chased Mr. Sampson on foot for about three blocks.[2] He said he grabbed the defendant, threw him to the ground, and wrestled with him. He said the defendant was combative, flailing his arms, punching, kicking and screaming. He said he was on one knee, attempting to turn the defendant over onto his stomach, and the defendant was on his back, tilted to the side, facing the officer, when the officer felt several blows to his left side. [II. 28-29, 52-53] Michael White said he sprayed Mr. Sampson with two short bursts of pepper spray and he became compliant. <u>Michael White admitted that he was angry at the defendant</u>. [II. 30, 72] Michael White said that as he had the defendant stand up, he heard something on the ground and saw a large buck knife with

---

[2] Michael White was not a police officer at the time of trial. [II. 43]

4

Exhibit C

because he did not have a driver's license and because one of the men had marijuana. [II. 119-122]

The defendant stopped his car in front of the Rebecca Johnson School and ran down Bowles Street, with Officer White in pursuit. He said he stopped because the officer threatened to "blow some holes in his fucking legs" if he did not stop running. Officer White told the Mr. Sampson to kneel down and lay forward, and put handcuffs on him, hurting his shoulder. [II. 122-123, 129-130]

Officer White picked the defendant up off the ground while he was hand cuffed and his shoulder was hurting. The defendant was upset and called him "every name in the book." Officer White brought the defendant's hands high enough up to hurt him. He picked him up off the ground and sprayed pepper spray (which the defendant called "mace") in his eyes while he was hand cuffed. The officer walked him toward the cruiser with the defendant in a bent over position, with his hands above his head and his face close to the ground. The officer said, "I told you I was going to get you." The officer brought Mr. Sampson to the cruiser, searched him, and took his knife out of his jacket pocket. [II. 131-132]

The knife was a work knife, with a tip that had been blunt before that day. The defendant had carried

6

the knife for more than seven years. The defendant denied taking the knife out while he was on Bowles Street and said he never tried to use the knife on Officer White. [II. 140-141]

As the defendant was placed in the cruiser, he complained about his eyes burning from the pepper spray. [II. 102] Officer White knew that cool air has a soothing effect on the pain and discomfort caused by pepper spray. [II. 59] Mr. Sampson said the temperature inside the cruiser was 75 to 80 degrees and Officer White rolled up the windows, turned the heat on and left him in the cruiser for about 15 to 20 minutes. His eyes were burning and he felt miserable. [II. 137] Michael White testified that a back window in the cruiser was open, but Officer Ward acknowledged that both the back windows and the front passenger window were closed, and the heat was on. [II. 103]

While the officers attended to the towing of the defendant's car, the defendant was banging his head against the window of the cruiser to get Officer Ward's attention, yelling, "Yo, open the damn window. I am suffocating in here." Mr. Sampson said that Officer White opened the back door of the cruiser and sprayed his face again with the pepper spray. [II. 160]

7

a blunt tip, which the officer seized. He then took Mr. Sampson back to the cruiser. [II. 31-32, 82]

Michael White testified that after the defendant had been placed in the cruiser, he felt a pain in his left side and Officer Ward pointed out some holes in the left side of his uniform shirt. [II. 34-36] Officer White was wearing a bullet proof vest under his shirt, which consisted of a canvas vest into which two pieces of Kevlar are slipped -- one in the front and one in the back. There was a cut in the canvas covering. [II. 37-38, 41, 66] <u>Michael White testified that there were no marks on the Kevlar itself, but Officer Ward said there was a mark on the Kevlar.</u>[3] Officer Ward did not see the knife until Officer White brought it back to the cruiser. [II. 70, 92-93]

Ricardo Sampson testified on his own behalf. On November 25, 1998, he was in a car on Eastern Avenue, talking with two men from whom he was buying marijuana. When they saw the cruiser, the men jumped into his car and suggested that he drive around the block. When the cruiser began to follow his car, Mr. Sampson fled

---

[3] Kevlar will not protect the wearer from the impact of a knife. It protects the wearer from a spinning projectile (like a bullet) by dispersing the force of the impact throughout the entire area of the vest. [II. 66]

# Commonwealth of Massachusetts

Appeals Court for the Commonwealth

At Boston,

In the case no. 02-P-192

COMMONWEALTH

vs.

RICARDO SAMPSON.

Pending in the Superior

Court for the County of Hampden

Ordered, that the following entry be made in the docket:

<u>Judgments affirmed</u>.

NOTE:
The original of the within rescript will issue in due course, pursuant to M.R.A.P.23
APPEALS COURT

By the Court,

_____, Clerk
(First Assistant)
Date October 10, 2003.